IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CATHERINE DEVINE, | § |
| | § |
|     *Pro Se* Plaintiff, | § |
| | § |
| VS. | §   CIV. A. NO. H-14-1782 |
| | § |
| EDUCATIONAL TESTING SERVICE, | § |
| | § |
|     Defendant. | § |

## **OPINION AND ORDER OF DISMISSAL**

Pending before the Court in the above referenced cause, removed from state court on diversity jurisdiction and alleging breach of contract and violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§ 17.41-.50, based on Defendant Educational Testing Service's ("ETS's") alleged failure to score properly Plaintiff Catherine Devine's ("Devine's") examination for a state educator's license, is ETS's Rule 12(b)(6) motion to dismiss Devine's First Amended Complaint (instrument #12).[1]

After careful review of the record and the applicable law, the Court concludes that the motion to dismiss should be granted for the reasons stated below.

---

[1] After *pro se* Plaintiff Catherine Devine filed a First Amended Complaint (#10) on July 24, 2014, the second motion to dismiss (#12), filed on August 8, 2014, superseded and mooted Defendant's first motion to dismiss (#8), filed on July 3, 2014. In Devine's response (#11) filed after the first motion to dismiss but before the second motion was filed, Devine notes that she has filed a First Amended Complaint and conclusorily asserts that it "state[s] credible causes of action against Defendant ETS." #11 at ¶ 2. Plaintiff has had almost three months to file a response to the second motion after it was filed, but has failed to do so.

**Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.

2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009); *Twombly*, 127 S. Ct. at 1974. "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th

Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Pleadings of a *pro se* litigant are liberally construed and the litigant is not held to the stringent standard of formal pleadings drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Haberman v. U.S.*. ___ Fed. Appx. ___, No. 14-10414, 2014 WL 5472571, at *2 (5th Cir. Oct. 30, 2014). Nevertheless a *pro se* litigant must still comply with the court rules of procedural and substantive law. *Bird v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981); *McWright v. Bank of America, N.A.*, No. 3-23 CV 1345-N, 2013 WL 6735013, *2 (N.D. Tex. Dec. 23, 2013).

**Allegations of the First Amended Complaint (#10)**

*Pros se* Plaintiff Catherine Devine ("Devine") alleges that ETS is a private testing service that provides standardized testing to the Texas Education Agency ("TEA") for school districts. Among such tests is the Texas Examination of Educator Standards ("TexEs"), in which there is a test for English Language Arts and Reading 7-12(231) ("ELAR7-12"). The ELAR7-12 has three scored sections, i.e., a multiple choice section and two constructed-response questions (a literary analysis question and a three-part writing assessment and pedagogy question).

Devine, a graduate of the University of Houston and Loyola College of Law, took the test as one of the requirements for

certain TEA teacher certifications. Stating that she has attached emails detailing the problems she encountered, but there are none filed, Devine alleges that during the test her computer froze for a while and that the environment impeded her test-taking. She reports that she scored 4 out of a possible 8 points on the literary analysis constructed-response question, and 3 out of a possible 12 points on the pedagogy constructed-response question, and therefore she failed the examination. After ETS refused to provide a copy of her responses to these questions, Devine complains that the scores she received are not consistent with the testing rubric published by ETS. She also charges that the problematic testing environment invalidated her scores. Devine asserts that the Houston Independent School District ("HISD") withdrew a job offer because of her reported score on the ELAR 7-12 because ETS refused to provide a valid score and correct the report provided to TEA and HISD.

Devine seeks compensatory and punitive damages in excess of $100,000.00 and a declaratory judgment establishing her "correct" score.[2] She asserts claims for breach of contract (i.e., because Devine paid the application fee and took the test, ETS was obligated to properly score and report her results)[3] and violation

---

[2] In her response she states, "Because of the passage of time and relief requested, Ms. Devine is no longer pursuing injunctive relief in this matter." #11, ¶ 3.

[3] Under Texas law to state a claim for breach of contract a plaintiff must allege "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the

of the DTPA (i.e., by offering testing services in Texas, ETS expressly or impliedly represented to test-takers that ETS would provide an appropriate test environment and properly score and report valid test results to the test-takers, the TEA and other appropriate parties, which it allegedly failed to do in Devine's case).[4]

### ETS's Rule 12(b)(6) Motion to Dismiss
### Plaintiff's First Amended Complaint (#12)

ETS contends that dismissal of the entire First Amended Complaint is appropriate because Devine fails to plead any cause of action or plausible entitlement to relief. ETS explains that Devine argues that her score of "3" on the constructed-response questions must be invalid because only even-numbered scores can result from correct scoring of the exam.

ETS requests the Court to take judicial notice of three publicly available documents with information about the ELAR 7-12 published by TEA and ETS: *The TExES Program 2013-14 Registration*

---

plaintiff as a result of the breach." *Smith International, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007), *quoting Valero Mktg. & Supply Co. v. Kalama International, LLC*, 51 S.W. 3d 345, 351 (Tex. App.-Houston [1st Dist.] 2001, no pet.).

[4] To state a claim for breach of the DTPA, the plaintiff must be a "consumer," i.e., "an individual . . . who seeks to acquire by purchase or lease any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4). To qualify as a consumer a plaintiff "(1) must have sought or acquired goods or services by purchase or lease" and (2) "those goods or services . . . must form the basis of the complaint." *Brittan Communications International Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002). Whether a person is a consumer is a question of law. *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 356 (5th Cir. 1996).

*Bulletin* ("*Bulletin*")(Ex. 1 to #12); *The TExES English Language Arts and Reading 7-12 (231) Preparation Manual* ("*Preparation Manual*")(Ex. 2); and *Understanding Your Texas Educator Certification Program* ("*TECP*") *Test Scores* (Ex. 3). These three documents were also incorporated into Devine's Original Petition. Devine bases her breach of contract claim on ETS's purported "contractual obligation" "to provide an appropriate test environment" and "to properly score and report her test results."

ETS explains that the ELAR 7-12 is a computer-administered exam composed of 100 multiple choice questions and two constructed-response questions requiring essay responses. *Preparation Manual*, Ex. 2 at 4. Plaintiff complains only about the constructed-response questions, which together make up approximately 35% of the examinee's overall score. *Id.*, at 64. In the literary analysis essay, the examinee is asked to discuss the common themes in two passages. *Id.* at 66. That response is graded on a four-point scale, applying the rubric found in the *Preparation Manual. Id.* at 69-70. The second constructed-response question, the "writing assessment and pedagogy assignment," requests the examinee to identify and discuss the strengths and weaknesses of student writing and to suggest an instructional activity to address the latter. *Id.* at 80. The answer is graded on a six-point scale, with each of the three "tasks" receiving from zero to two points. *Id.* Both of the constructed-response questions are scored according to an "independent double-scoring model." *Scoring Pamphlet*, Ex. 3 at 6.

In other words, two raters trained to use the criteria in the scoring rubrics first score each response. *Preparation Manual*, Ex. 2 at 64. Then the scores are added to provide a total, unless the response "receives discrepant scores from the two raters." *Id.* If there is a discrepancy, "additional scoring will be used to determine the final score" *Id.*[5]

What constitutes "discrepant scores" is not the same for the two constructed-response questions. For the literary analysis essay, the two raters must either give **identical** scores or a third rater will be added to score the answer. Therefore, as reflected in the *Scoring Pamphlet*, even-numbered totals (the sum of two

---

[5] ETS explains that the Bulletin, Preparation Manual and Scoring Pamphlet are not only incorporated by reference in the Amended Complaint, but are subject to judicial notice because they are not subject to reasonable dispute and are publicly available on the TExES website, which is a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (b)(2). Judicial notice can be taken of information on an official government website. *Kew v. Bank of Am., N.A.*, H-11-2824, 2012 WL 1414978, at *3 n.4 (S.D. Tex. Apr. 23, 2012).
    This Court agrees. Federal Rule of Evidence 201(b) allows the Court to take judicial notice only of an adjudicative fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Furthermore, Rule 201(g) states, "In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed." "A fact that has been judicially noticed is not subject to dispute by the opposing party." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1988)("Since the effect of taking judicial notice under 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing."). The Fifth Circuit has held that the court may take judicial notice of information posted on a government website. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).

identical scores) are possible with two raters. Ex. 3 at 3. In contrast, for the writing assessment and pedagogy question a third rater is used only "[i]f the two ratings differ by more than 1 point." *Id.* at 6. If the raters's scores differ by only one point, the scores are not considered discrepant and the combined score will be an odd number. *Id.* at 3. ETS includes a chart from the *Scoring Pamphlet* (Ex. 3 at 3) that shows that odd-numbered scores are possible on the writing assessment and pedagogy question. Chart included in #12 at p. 5.

As for Devine's alleged problems with her computer freezing during the test, the *Registration Bulletin* expressly states that the examinee can get help from the test administrator. Ex. 1 at 40. If it is a technical issue that prevents the examinee from finishing the test, the examinee is told to get in touch with ETS Customer Service "as soon as possible" to reschedule the test. *Id.* If there are any other issues, the *Bulletin* instructs the examinees to send comments directly to ETS "about the test center or the conditions under which they took a test" within two days of the test date. *Id.* at 42. Examinees may also cancel their scores for any reason at the end of the exam session. *Id.*

Devine took the ELAR 7-12 in January 2014 in an effort to obtain a teaching certificate. She concedes in her Amended Complaint that she scored four out of eight points on the literary analysis section and three out of twelve points on the writing assignment and pedagogy question. These scores combined with her score on the multiple-choice section and converted to a sealed

final score, were not sufficient to pass the exam.  Devine errs (1) in stating that ETS will only add individual raters' scores together "when [they] are in agreement" and "have awarded the same raw score" and (2) in her conclusion that the only possible scores are "whole number scores (0, 2, 4, 6, 8) for the writing assessment and pedagogy question." Orig. Pet., #1, ¶ 5.  She also errs in concluding that the individual raters' scores on the writing assignment and pedagogy question were not added, i.e., that she received two identical scores of 3 from the raters and that her actual score was 6.  *Id.*; *see also* First Amended Complaint at ¶¶ 5 and 7.

Devine's claims of incorrect scoring rest wholly on her false premise that a score of 3 on the writing assessment and pedagogy constructed-response question must be wrong. Because the documents showing that this premise is erroneous are incorporated by reference in the First Amended Complaint, her incorrect-scoring claims must be dismissed as a matter of law.  Thus she fails to state a claim for breach of contract based on ETS' alleged deviation from "the published rubric" because the documents clearly state that ETS scores the constructed response question using an independent double-scoring model, pursuant to which the response is scored by two raters and by a third if the response is given discrepant scores by the two. *Preparation Manual*, Ex. 2 at p. 64.  Moreover regarding the writing assessment and pedagogy claims, ETS shows that scores from the initial two rates are not considered discrepant if they are within one point of each other.

As the chart makes clear, a total score of 3 (total reflecting two scores differ by only one point) on the writing assessment and pedagogy constructed-response is a valid score, but one that demonstrates "limited or no knowledge" of the subject matter. Scoring Pamphlet, Ex. 3 at 3; #12 at p. 4. Thus her claim fails.

Her testing-environment claims must also be dismissed because she fails to allege that ETS did not follow its procedures and regulations, nor has she alleged facts showing that the testing environment affected her scores. Regarding her allegation that her computer froze and that the "testing environment was detrimental to a proper test experience" (Amended Complaint at ¶ 5), Devine does not provide sufficient facts to show breach of contract nor identify any provisions in her contract that she believes were breached.

Nor does Devine claim that she took advantage of her right to cancel her scores before receiving the score report. *Bulletin* at 42, 45. Instead she chose to receive her scores. She fails to state a breach of ETS's contractual duty.

Nor does Devine allege that she failed to pass the exam as the result of the alleged improper testing environment. Instead she claims that her failure to pass was due solely to ETS' incorrect scoring of her constructed responses.

Devine alleges that ETS violated the DTPA by failing to report a "valid score" or "provide an appropriate test environment." A DTPA claim must be based on something more than a breach of contract. *Crawford v. Ace Sign, Inc.*, 917 S.W. 2d 12,

- 12 -

14 (Tex. 1996)(*per curiam*), *quoting Ashford Development, Inc. v. USlife Real Estate Services*, 661 S.W. 2d 933, 935 (Tex. 1983)("An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA."); and *Dura-Wood Treating Co. v. Century Forest Industries, Inc.*, 675 F.2d 745, 756 (5th Cir. 1982)("Dura-Wood argues it is deceptive to enter into a contract and later breach that contract, since Dura-Wood entered the contract believing Century Forest actually would perform. However, an allegation of breach of contract--without more--does not constitute a false, misleading, or deceptive action such as would violate section 17.46 of the DTPA."), *cert. denied*, 459 U.S. 865 (1982). Morever the referenced and incorporated documents show there is no basis to reasonably infer any "false, misleading, or deceptive act or practice" or "unconscionable action" by ETS in scoring her exam in accordance with published procedures or because her computer froze but she chose not to cancel her scores.

Because Devine's substantive claims must be dismissed for failure to state a claim for which relief might be provided, her declaratory judgment claim necessarily also fails.

### Court's Decision

After reviewing the record and the applicable law, the Court agrees with ETS that Devine has failed to state a claim. This Court would add that the DTPA claim is subject to Rule 9(b)'s heightened pleading standards, which Devine had clearly failed to satisfy. *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238

F.3d 363, 368 (5th Cir. 2001); *Berry v. Indianapolis Life Ins.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009). Nor does Devine qualify as a "consumer" under the DTPA because she was seeking to obtain an intangible, an educator's certification, and did not seek to acquire, nor acquire, any goods and services by purchase or lease. *Montes v. Am. Hospital Association*, No. 3:12-CV-1999-M-BK, 2012 WL 4928872, at *6 (N.D. Tex. Sept. 18, 2012), *citing Swenson v. Engelstad*, 626 F.2d 421, 428 (5th Cir. 1980)(intangibles are not "goods").

Moreover Devine has already had "two bites of the apple," having amended her complaint after ETS filed its first motion to dismiss. Accordingly, the Court

ORDERS that ETS's motion to dismiss Plaintiff's First Amended Complaint (#12) is GRANTED. A final judgment will issue by separate order.

**SIGNED** at Houston, Texas, this 12th day of December, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE